

FILED · SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 19 2008

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT LOUIS CARVER; ROBERT LOUIS CARVER, II; JAMES LOWELL DEMERS; LINCOLN FUNDS INTERNATIONAL, INC., a Nevada corporation; and PAROPES CORPORATION, f/k/a BROOKSTONE CAPITAL, INC., a Nevada corporation,<br><br>    Defendants,<br><br>LINCOLN BIOTECH VENTURES, L.P.; LINCOLN BIOTECH VENTURES II, L.P.; LINCOLN BIOTECH VENTURES III, L.P., and MacAUSLAN CAPITAL PARTNERS, LLC,<br><br>    Relief Defendants. | Case No. SACV 08-00627-CJC(RNBx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE PLAINTIFF'S APPICATION FOR PRELIMINARY INJUNCTION, CONTINUED ASSET FREEZE, APPOINTMENT OF A PERMANENT RECEIVER, ORDER PROHIBITING THE DESTRUCTION OF DOCUMENTS** |

Case 8:08-cv-00627-CJC-RNB   Document 25   Filed 06/19/08   Page 2 of 13   Page ID #:708

This matter came to be heard upon the Court's June 6, 2008 Temporary Restraining Order And Orders: (1) Freezing Assets, (2) Prohibiting The Destruction Of Documents, and (3) Appointing a Temporary Receiver, And Order to Show Cause Re Preliminary Injunction And Appointment Of A Permanent Receiver.

The Court, having considered the Securities and Exchange Commission's ("Commission") Complaint, the Commission's *Ex Parte* Application for a Temporary Restraining Order filed on June 6, 2008, the supporting Memorandum of Points and Authorities, Declarations and Exhibits, the Non-Opposition filed by defendants Robert Louis Carver ("Carver") and Robert Louis Carver II ("Carver II"), the failure of any other defendant or relief defendant to file any opposition, the Commission's Reply Brief, and all other evidence and argument presented, makes the following findings of fact and conclusions of law:

## I. **FINDINGS OF FACT**

a. The Commission presented evidence that from at least April 2004 continuing to the present, defendants have been engaged in a fraudulent scheme that raised over $21.8 million from about 400 investors, who are located throughout the United States, through the sale of common stock and limited partnership interests in a series of five unregistered offerings. (Bergstrom Dec. ¶13, Ex. 8, pp. 62-64; ¶15a-e, Exs. 10-14, p. 67-284; ¶27, Ex. 31, pp. 379-385; ¶48a-e.)

b. The Commission asserts that in the course of two common stock offerings in Brookstone Capital, Inc. ("BCI") and Lincoln Funds International, Inc. ("LFI"), defendants made several misrepresentations and omissions, including failing to disclose the criminal history of defendant Robert L. Carver, misrepresenting the timing of a potential initial public offering ("IPO"), and making projections about the future price of the common stock. (Bergstrom Dec. ¶16, Exs. 16-17, p. 288; Brown Dec. ¶8, Ex. 2, p. 607; Borunda Dec. ¶¶3-4.)

c. The Commission presented evidence that in the course of three limited

1

partnership offerings, defendants defrauded the partnerships and the investors therein by misusing and misappropriating at least $2.5 million of the investors' funds. (Haack Dec. ¶9, Ex. 3, p. 8; ¶10, Ex. 4, p. 9-11.)

  d. The Commission asserts that defendants BCI and LFI were the general partners of the partnerships and the investment advisers for the partnerships, and defendants breached their fiduciary duties to the partnerships through their misuse of the funds' assets. (Bergstrom Dec. ¶24, Ex. 28, p. 360; ¶25, Ex. 29, p. 367; ¶26, Ex. 30, p. 374.)

  e. The Commission presented evidence that in the LFI offering which commenced in January 2008, defendants failed to disclose that LFI is the successor to BCI and that Carver was and is associated with both LFI and BCI. (Brown Dec. ¶7, Ex. 1, pp. 138, 164-68, 181-84.)

  f. Based on undisputed evidence presented by the Commission, on June 3, 2008, defendant DeMers transferred and apparently misappropriated $2.9 million of investors' funds by transferring that amount from accounts controlled by BCI, LFI and affiliated entities to a new entity named MacAuslan Capital Partners, LLC. (Bergstrom Dec., ¶56, Ex. 44, pp. 470-517.)

## II.  CONCLUSIONS OF LAW

### Jurisdiction

  a. This Court has jurisdiction over the parties to, and the subject matter of, this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a); Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa; and Section 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-14.

### Preliminary Injunction Standard

  b. Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act provide that the Commission may obtain a preliminary injunction without a

1 bond upon a proper showing. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d); *see SEC v.*
2 *Wencke,* 622 F.2d 1363, 1375 (9th Cir. 1980). To obtain such relief, the
3 Commission must demonstrate: (1) a *prima facie* case that a violation of the
4 securities laws has occurred; and (2) a reasonable likelihood that the violation will
5 be repeated. *SEC v. Unique Fin. Concepts, Inc.,* 196 F.3d 1195, 1199 n.2 (11th Cir.
6 1999); *see also FSLIC v. Sahni,* 868 F.2d 1096, 1097 (9th Cir. 1989); *SEC v.*
7 *Koracorp Indus., Inc.,* 575 F.2d 692, 697 (9th Cir. 1978); *SEC v. United Financial*
8 *Group, Inc.,* 474 F.2d 354, 358-59 (9th Cir. 1973).

9     c.     The Commission has established a *prima facie* case that a violation of
10 the securities laws has occurred and a reasonable likelihood that the violation will be
11 repeated.

12     d.     Good cause exists to believe that defendants Carver, Carver II, James
13 Lowell DeMers ("DeMers"), Paropes Corporation f/k/a Brookstone Capital, Inc.
14 ("BCI"), and LFI and each of them, have engaged in, are engaging in, and are about
15 to engage in transactions, acts, practices and courses of business that constitute
16 violations of Sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a),
17 77e(c) and 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule
18 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1) and 206(2) of the
19 Advisers Act, 15 U.S.C. § 80b-6(1) and 80b-6(2).

20     e.     Good cause exists to believe that defendants Carver, Carver II, and
21 DeMers and each of them, have engaged in, are engaging in, and are about to
22 engage in transactions, acts, practices and courses of business that constitute
23 violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

24     f.     Good cause exists to believe that defendants LFI and DeMers and each
25 of them, have engaged in, are engaging in, and are about to engage in transactions,
26 acts, practices and courses of business that constitute violations of Sections 206(4)
27 of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R.
28 § 275.206(4)-8.

1  g.  Good cause exists to believe that defendants will continue to engage in such violations to the immediate and irreparable loss and damage to investors and to the general public unless they are restrained and enjoined.

**Prima Facie Evidence of Section 5 Violations**

h.  The common stock and limited partnership interests offered and sold by defendants in BCI and LFI constitute securities under the Securities Act and Exchange Act. *SEC v. Edwards*, 540 U.S. 389, 393, 124 S.Ct. 892, 157 L.Ed.2d 813 (2004); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

i.  Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c), prohibit the unregistered offer and sale of securities in interstate commerce, unless an exemption from registration applies. *SEC v. Phan*, 500 F.3d 895, 901-02 (9th Cir. 2007); *SEC v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980). Section 5 operates as a strict liability statute. *SEC v. Holschuh*, 694 F.2d 130, 137 n.10 (7th Cir. 1982). A *prima facie* case of a Section 5 violation is established by showing: (1) defendants, directly or indirectly, offered or sold securities; (2) no registration was in effect or filed with the Commission for those securities; and (3) interstate transportation or communication or the mails were used in connection with the offer and sale. 15 U.S.C. §§ 77e(a) & 77e(c); *see SEC v. Phan*, 500 F.3d at 902. Scienter is not an element of a Section 5 claim.

j.  In the present case, the Commission presented evidence that defendants have violated and will continue to violate Section 5: (1) the common stock and limited partnership interests are securities in the form of stock and investment contracts; (2) defendants offer and sell them to investors through means of interstate commerce; and (3) the offer and sale of the offerings is not registered with the Commission. (Bergstrom Dec. ¶13, Ex. 8, pp. 62-64; ¶15a-e, Exs. 10-14, p. 67-284; ¶27, Ex. 31, pp. 379-385; ¶48a-e.)

k.  Once the Commission establishes the *prima facie* elements of a

4

Section 5 violation, the defendants bear the burden of proving that an exemption from registration applies. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Murphy*, 626 F.2d at 641. Defendants presented no evidence that an exemption from registration applies to the offerings at issue.

l.      These facts demonstrate that the Commission is likely to succeed on its claim that the defendants violated Section 5 of the Securities Act.

**Prima Facie Evidence of Violations of the Anti-Fraud Provisions of the Securities Act and Exchange Act**

m.      Section 17(a) of the Securities Act prohibits fraud in the offer and sale of securities. 15 U.S.C. § 77q(a). Similarly, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit fraud in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

n.      To establish liability under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, of the Exchange Act, and/or Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)(1), the Commission must prove by a preponderance of the evidence three basic elements: (1) a material misrepresentation, omission of material fact, or other fraudulent device; (2) in connection with the purchase, offer, or sale of a security; and (3) with the requisite mental state. *SEC v. Rana Research, Inc.*, 8 F.3d at 1364; *SEC v. TLC Investments and Trade Co.*, 179 F.Supp.2d 1149, 1153 (C.D.Cal.2001).

o.      Sections 10(b) and 17(a) require that the fraud concern a material fact. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *TSC Indus.*, 426 U.S. at 449; *Murphy*, 626 F.2d at 653. The antifraud provisions impose "a duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading." *SEC v. Fehn*, 97 F.3d 1276, 1290 n.12

1  (9th Cir. 1996).

2       p.    The Commission presented evidence that the defendants made material
3  misrepresentations by falsely telling investors in the BCI and LFI offerings that the
4  companies would soon undertake an IPO and that the resulting stock price would
5  significantly increase. (Bergstrom Dec. ¶16, Exs. 16-17, p. 288; Brown Dec. ¶8, Ex.
6  2, p. 607; Borunda Dec. ¶¶3-4.) Misstatements regarding an impending IPO are
7  material to a reasonable investor. *SEC v. Platinum Inv. Corp.*, 2006 WL 2707319,
8  *1-2 (S.D.N.Y. 2006); *SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992).

9       q.    The Commission presented evidence that the defendants' projections
10 of the future price of the stock of BCI and LFI, which were made without any
11 reasonable basis, were material. *See, e.g., SEC v. R.A. Holman & Co., Inc.*, 366
12 F.2d 456, 458 (2d Cir. 1966); *SEC v. Bocchino*, No. 98 Civ. 7525, 2002 WL
13 31528472, at *1 (S.D.N.Y. Nov, 8, 2002). Defendants did not present evidence of a
14 reasonable basis for these projections.

15      r.    The *Commission* presented evidence that the defendants' failure to
16 disclose Carver's criminal history and felony convictions was a material omission.
17 *SEC v. TLC Invs. and Trade Co.*, 179 F. Supp. 2d 1149, 1153 (C.D. Cal. 2001). The
18 Commission also presented evidence that the failure to disclose the relationship
19 between LFI and BCI was a material omission. *SEC v. Fehn*, 97 F.3d at 1290.
20 Defendants did not provide any evidence to the contrary.

21      s.    Violations of Section 17(a)(1) of the Securities Act and Section 10(b)
22 of the Exchange Act and Rule 10b-5 thereunder require a showing of scienter.
23 *Aaron v. SEC*, 446 U.S. 680, 701-02, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). The
24 Supreme Court has defined scienter as "a mental state embracing intent to deceive,
25 manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96
26 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Ninth Circuit, scienter may be
27 established by a showing of recklessness. *Hollinger v. Titan Capital Corp.*, 914
28 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc).

t.  The Commission presented evidence that Carver, Carver II, and DeMers acted with scienter. For example, Carver controlled the information disseminated to investors and drafted certain private placement memoranda and sales scripts used by sales agents. (Brown Dec. ¶7, Ex. 1, p. 14; ¶8, Ex. 2, p. 586-87, 592-603, 605, 607-09, 610.) This shows that Carver either knew or was reckless in not knowing that the information being provided to investors about the upcoming IPO, the anticipated share price, and his expertise was false or misleading.

u.  Likewise, the Commission presented evidence that Carver II drafted certain PPMs, approved sales scripts for the offerings, and was aware of the prior regulatory orders issued against Carver and BCI. (Brown Dec. ¶7, Ex. 1, p. 14; Brown Dec. ¶9, Ex. 3, p. 665.) This establishes that Carver II knew or was reckless in not knowing that the representations made to the LFI and partnerships' investors were false and misleading.

v.  The Commission also presented evidence that DeMers knew that LFI did not have adequate books, that the company did not have audited financials, it had not filed a registration statement or retained key professionals necessary for a public offering, and there was no basis for the anticipated share price being represented to investors. (Brown Dec. ¶7, Ex. 1, p. 8, 10, 151-153; Pollack Dec., ¶5, p. 6.) These facts establish that DeMers knew or was reckless in not knowing that the representations made to the LFI and partnerships' investors were false and misleading.

w.  Defendants did not present probative evidence to rebut the Commission's evidence regarding scienter.

x.  These facts demonstrate that the Commission is likely to succeed on its claim that defendants violated the anti-fraud provisions of the Securities Act and Exchange Act.

**Prima Facie Evidence of Investment Adviser Violations**

y.  An investment adviser is defined "as any person who, for

compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). This definition includes a general partner of a fund or investment manager of a limited partnership who manages a fund's investments for compensation. *Abrahamson v. Fleschner*, 568 F.2d 862, 869-870 (2d Cir. 1977). In addition, individuals associated with an investment adviser entity can also be held liable under Section 206 where "the activities of the associated person cause him or her to meet the broad definition of 'investment adviser.'" *See In the Matter of John J. Kenny*, SEC Rel. No. IA-2128, n. 54 (May 14, 2003).

z.  The Commission presented evidence that LFI held itself out as being in the business of investment management and also received compensation of 35% as a "management fee" for managing the limited partnerships and that the Carvers and DeMers each exercised control over LFI and BCI. (Bergstrom Dec. ¶15c, Ex. 12, p. 177; 15d, Ex. 13, p. 209; 15e, Ex. 14, p. 255; Brown Dec. ¶7, Ex. 1, p. 414-415; Bergstrom Dec. ¶46, Ex. 42, p. 465.)

aa.  Section 206(1) of the Advisers Act prohibits an investment adviser from employing "any device, scheme, or artifice to defraud any client or prospective client." Section 206(2) of the Advisers Act prohibits an investment adviser from engaging "in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client." Section 206(1) requires a showing of scienter, but Section 206(2) requires only negligence. *See, e.g., Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979); *Vernazza v. SEC*, 327 F.3d at 859.

bb.  Investment advisers owe a fiduciary duty to their clients to exercise the utmost good faith, and to provide such clients with full and fair disclosure of all material facts. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("section 206 established 'federal fiduciary standards' to govern the conduct of investment advisers").

1    cc.    The Commission presented evidence that LFI, the Carvers, and DeMers violated the Advisers Act by misappropriating at least $2.5 million from the partnerships. (Haack Dec. ¶10, Ex. 4, p. 4-9.) The Commission also presented evidence that the Carvers used monies to make up trading losses in a brokerage account, and Carver II also transferred $1.8 in an undocumented "loan" to BCI, which remains outstanding. (Brown Dec. ¶7, Ex. 1, p. 174-76.) The evidence also shows that DeMers transferred out all of the remaining cash from the bank accounts of the partnerships in June 2008. (Bergstrom Dec. ¶56, Ex. 44, p. 470-517.)

dd.    These facts show that the Commission is likely to succeed on its claim that defendants violated the Adviser's Act.

ee.    With regard to conduct occurring after September 10, 2007, Section 206(4) and Rule 206(4)-8 thereunder provide that it is an illegal practice for advisers to: (1) make any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle; or (2) otherwise defraud those investors or prospective investors. 17 C.F.R. § 275.206(4)-8.

ff.    The Commission presented undisputed evidence that LFI and DeMers violated Section 206(4) and Rule 206(4)-8 thereunder by misrepresenting to investors in the third partnership that 65% - 85% of their monies would be invested in biotech companies. Instead, in June 2008, DeMers transferred off all of the remaining investors' monies to a separate company he manages. (Bergstrom Dec. ¶56, Ex. 44, p. 470-517.) These facts show that the Commission is likely to succeed on its claim that LFI and DeMers violated the Adviser's Act.

**Prima Facie Evidence of Broker-Dealer Registration Violations**

gg.    Section 15(a)(1) of the Exchange Act requires individuals who effect nonexempt securities transactions to be associated with a registered broker-dealer. A "broker" is "any person engaged in the business of effecting transactions in

securities for the accounts of others." 15 U.S.C. § 78c(a)(4). The solicitation of investors to purchase securities, the receipt of transaction-related compensation, and leading the sales effort are evidence of being engaged in the business of effecting transactions in securities for the accounts of others. *SEC v. George*, 426 F.3d 786 (6th Cir. 2005).

hh. The Commission presented evidence that the Carvers and DeMers violated Section 15(a)(1) by failing to associate with a registered broker-dealer at a time when they acted as brokers by regularly participating in the solicitation of or actual sale of securities. (Bergstrom Dec. ¶14, Ex. 9, p. 65-66.) The Carvers and DeMers did not present any evidence indicating that they qualify for exemptions from registration. The Court finds that the Commission has demonstrated a high probability of succeeding on its claim that the Carvers and DeMers violated Section 15(a) of the Exchange Act.

**Likelihood of Future Violations**

ii. Based on the evidence submitted regarding the extensive and long-term violations that likely took place in the past and the defendants' history of continuing those offerings despite the issuance of multiple orders by state regulatory agencies, the Court finds that an inference of future violations is appropriate in this case.

**Appointment of a Permanent Receiver, Continuation of the Asset Freeze and Prohibiting the Destruction of Documents**

jj. Federal courts have inherent equitable authority to issue a variety of ancillary relief measures in Commission injunctive actions including ordering asset freezes, ordering accountings, appointing receivers, and prohibiting the destruction of documents. *Wencke*, 622 F.2d at 1369; *SEC v. International Swiss Investments Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990); *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003).

kk. Defendants have not objected to the appointment of a permanent

receiver, an order for accountings, or an order prohibiting the destruction of documents. In light of the evidence set forth above and the defendants' non-opposition to such orders, it is appropriate to appoint a permanent receiver and enter an order prohibiting the destruction of documents.

11. In addition, in light of the evidence of recent transfers of funds out of corporate accounts and the defendants' propensity to transfer funds between a variety of accounts, the Court finds that a continuation of the asset freeze is warranted here. Defendants Carver, Carver II and DeMers oppose a continuation of the asset freeze on the grounds that Defendants need money for living expenses and attorneys' fees to defend this action. Defendants Carver, Carver II and DeMers have failed to make an appropriate showing of the need for the freeze to be lifted.

Courts clearly have the authority to enter freeze orders in an SEC enforcement action. *See SEC v. International Loan Network, Inc.*, 770 F. Supp. 678, 696 (D.C. Cir. 1991). Such relief facilitates the enforcement of any disgorgement remedy which might result from finding at trial that a violation had occurred. *See SEC v. Coates*, 1994 U.S. Dist. LEXIS 11787, 1994 WL 455558 (S.D.N.Y. 1994). If the court has the authority to freeze personal assets temporarily, it logically has "the corollary authority to release frozen personal assets, or lower the amount frozen." *SEC v. Ducland Gonzales de Castilla*, 170 F. Supp. 2d 427 (S.D.N.Y. 2001). Courts are called upon to weigh "the disadvantages and possible deleterious effect of a freeze [. . . ] against the considerations indicating the need for such relief." *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972). A number of courts, including several within the Ninth Circuit, have permitted defendants in SEC enforcement actions to receive a portion of frozen assets for necessary and reasonable living expenses. *See SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1019 (N.D. Cal. 2007); *SEC v. Plus Money, Inc.*, 2008 U.S. Dist. LEXIS 35355, *6 (S.D. Cal. 1008); *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854-55 (W.D. Va. 2001). Courts which have addressed requests for living expenses look

1 for evidence of the defendant's overall assets or income. *See SEC v. Declaud*
2 *Gonzelez de Castilla*, 170 F. Supp. 2d 427 (S.D.N.Y. 2001). Where the courts have
3 denied these requests, the defendants were found to have other sources of income or
4 were requesting funds for luxuries, not necessities. *See id.* (finding that the
5 defendant had voluntarily waived a $15,000 per month salary and was seeking
6 money for a nanny, housekeeper, handyman and nurse); *see also Coates*, 1194 U.S.
7 Dist. LEXIS at *6-7 (finding defendant failed to tell the court that the receiver was
8 already paying month salaries to him and his family totaling almost $12,000 and
9 that budget included lawn and pool service).

10     Here, Defendants have failed to submit any evidence of their overall assets or
11 various sources of income. Once Defendants submit this evidence, along with an
12 itemized list of their necessary and reasonable living expenses, the Court will
13 consider releasing some of their frozen assets on a quarterly basis.

14     Defendants' request for money for attorneys' fees to defend this action is
15 denied without prejudice. The Court will consider releasing some of the frozen
16 assets for reasonable attorneys' fees upon a showing that Defendants have no other
17 income to pay for legal representation and that such representation is essential to
18 Defendants ability to defend themselves against the claims brought by the SEC.
19 Any fee award will be determined on a quarterly basis, similar to any reasonable and
20 necessary living expenses.

22 DATED:     June 19, 2008

25                     HONORABLE CORMAC J. CARNEY
26                     UNITED STATES DISTRICT JUDGE